**Sara FEDER, Plaintiff,**

v.

**Robert D. HARRINGTON, John R. Gosnell, the Paul Revere Corporation and Avco Corporation, Defendants.**

**No. 67 Civ. 1531.**

United States District Court,
S. D. New York.

Dec. 31, 1970.

Sheib, Shatzkin & Cooper, New York City, for plaintiff; Edward Labaton, New York City, of counsel.

Debevoise, Plimpton, Lyons & Gates, Williamson & Schoeman, New York City, for defendants Robert D. Harrington, John R. Gosnell and The Paul Revere Corp.

Cravath, Swaine & Moore, New York City, for defendant Avco Corp.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff, Sara Feder, moves pursuant to Fed.R.Civ.P. 23 to have the within action declared as a class action and to amend her complaint pursuant to Fed. R.Civ.P. 15.

From the papers before me, it appears that in 1966 plaintiff was a shareholder in defendant Avco Corporation (hereinafter referred to as "Avco") while merger negotiations were taking place between Avco and co-defendant Paul Revere Corporation (hereinafter referred to as "Revere"). Since Revere's merger proposals were apparently not acceptable to Avco's management at that time, negotiations were broken off. In order to establish itself as a larger shareholder of Avco and thereby make the merger more attractive to Avco's management, Revere made a tender offer dated February 3, 1967 to the shareholders of Avco for up to 4,000,000 shares of common stock. The price offered by Revere was $33.00 per share, which was apparently $4.50 above the closing price for one share of Avco common stock on the New York Stock Exchange on the day the offer was announced. The relevant language in the tender offer was as follows:

> "The Purchaser has had discussions with the management of Avco Corporation regarding a possible merger with the latter, but no agreement or understanding regarding such a transaction was reached."

Pursuant to the tender offer, approximately 9,200,000 shares of Avco common stock were tendered to Revere. Revere thereafter purchased 43 per cent of the shares tendered, or 4,000,000, on a pro rata basis for $132,000,000.00.

In her complaint, movant alleges that the conduct of the defendants Avco, Revere, Robert Harrington (President of Revere) and John Gosnell (Executive Vice President and Director of Revere and a Director of Avco), in making the tender offer, violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S. C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 CFR § 240.10b–5(1967). More specifically, plaintiff contends that the tender offer contained "untrue statements of material facts and omitted * * * material facts necessary * * * to make statements made, in light of the circumstances under which they were made, not misleading." [1]

Among the facts allegedly omitted were: that Revere and Avco had not in fact terminated merger negotiations; that the financial condition of Avco was improving substantially and Revere was

---

1. Complaint, at 3 (filed April 18, 1967).

made aware of this fact through insider information which was withheld from the shareholders of Avco; and that the directors of Avco did not intend to tender their stock in response to the tender offer.

Plaintiff asserts that in reliance on the tender offer, she tendered 100 shares of Avco common stock, of which 43 were accepted by Revere. She seeks as damages $9.00 per share on the 43 shares accepted by Revere, which is the difference between the Revere offer of $33.00 per share and the $ 42.00 per share market price on the day the complaint was filed.

The defendants, on the other hand, argue that there was no "understanding" between Revere and Avco concerning a merger to take place following the tender offer and that, in any event, Revere was under no obligation to inform the Avco shareholders of its intentions with regard to the stock to be acquired pursuant to the tender offer.

Plaintiff seeks class determination on behalf of all shareholders of Avco common stock who sold their stock to Revere for $33.00 per share pursuant to the tender offer of February 3, 1967.

In order for a suit to be maintainable as a class action, it is incumbent upon the moving party to satisfy all of the requirements of Fed.R.Civ.P. 23(a) and one of the requirements of sub-section (b) of Rule 23. Rule 23(a), in pertinent part, provides:

> "One or more members of a class may sue * * * as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims * * * of the representative parties are typical of the claims * * * of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Defendants do not contest the fact that the first two requirements of Rule 23(a) are present in this action. Approximately 22,000 tenders of Avco common stock were received in response to Revere's tender offer. Defendants note that since many of the tenders were in "street names", the 22,000 letters of transmittal may have represented as many as 57,000 individual shareholders. Obviously, joinder of all the members of such a class would be impracticable. It is equally obvious that there are questions of law and/or fact common to the class. "Since each class member tendered under the same Tender Offer and pursuant to the identical writing, questions of fact are common to all persons who tendered their shares. Questions of law are also common to class members, namely, whether the acts complained of constituted a violation of the Securities Exchange Act." Epstein v. Weiss, 50 F.R.D. 387, 390 (E.D.La.1970).

It is urged, however, that plaintiff's claim is not typical of those of the class that she seeks to represent, and that she will not fairly and adequately protect the interests of the class. Furthermore, it is contended that since the individual issues predominate over the class issues, this action is inappropriate for class determination. Fed.R.Civ.P. 23(b) (3).

Defendants cite four reasons for their contention that plaintiff will not adequately represent the class: (1) her delay in bringing this motion; (2) the small size of her holdings and the fact that no other members of the class have attempted to intervene in this action; (3) possible conflicts between plaintiff and the other class members; and (4) plaintiff's alleged disregard of the notice requirements of Rule 23.

■ With regard to plaintiff's alleged delay in seeking class determination, defendants cite no authority and this Court is aware of none which requires withholding class determination solely because of a delay in bringing on

the motion. While Rule 23(c) (1) seeks to discourage unnecessary delays in moving for class determination, absent a showing of prejudice to either the class or the defendant, denying the motion would seem to be a harsh result which could prejudice the class. Moreover, plaintiff's conduct cannot be characterized as dilatory since she has completed discovery during the interim and is apparently ready for trial. In addition, there has been no showing that the motion was not made as soon as practicable. There may be instances where a party finds it essential to complete discovery before moving for class determination. While plaintiff has admittedly not attempted to justify the delay on these grounds, this Court, absent a showing of prejudice, is nevertheless constrained to find the delay not significant enough to deny the motion. After the class has been notified, if it develops that the class has been prejudiced by plaintiff's delay in moving for class determination, the Court could, pursuant to Rule 23(c) (1), alter or modify this decision and order to be entered hereon.

■ Defendants' second reason for asserting that plaintiff will not adequately represent the class is equally unfounded. "It is now well settled that neither the number of representative parties nor their financial interests is controlling in determining whether the plaintiffs will fairly and adequately protect the interests of their class. Thus a *single* plaintiff may represent the entire class, *no matter how small his claim may be,* if others factors indicate that he will fairly and adequately protect the interests of his class." (Emphasis supplied.) Epstein v. Weiss, *supra,* at 391; *accord,* Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968). As indicated above, this Court can, at a later date, modify its order or revoke class determination, if after the class has been notified it becomes apparent that numerous members of the class have opted out and the representation is in fact inadequate.

Epstein v. Weiss, *supra,* 50 F.R.D. at 391; Weisman v. M C A Inc., 45 F.R.D. 258, 262 (D.Del.1968) ; cf. Schy v. Susquehanna Corp., 419 F.2d 1112 (7th Cir. 1970.)

■ Defendants also suggest that there exist possible conflicts in interest between plaintiff and certain other members of the class. Specifically, it is urged that since plaintiff is no longer a shareholder of Avco she is unable to adequately represent any members of the class who are still shareholders of Avco. However, since it has already been held that a "plaintiff who has acquired and *retained* securities * * * can 'fairly and adequately' represent those who purchased securities and thereafter sold them—and vice versa." Herbst v. Able, 47 F.R.D. 11, 15 (S.D.N.Y.1969), defendants' argument seems premature. It cannot presently be determined with certainty that such a conflict exists and, if so, whether it is significant without some indication from those class members who are still Avco shareholders, as to whether they view the plaintiff as a true representative of their interests. If a sharp division between those class members who are still shareholders and those who are not develops, it would seem more appropriate to designate subclasses or require those class members dissatisfied with plaintiff's representation to "opt out" rather than deny the motion entirely. Since the class members in nearly every securities action have this "conflict of interest", to rule otherwise could severly deter class determination in those cases in which it is most appropriate.

■ An alleged disregard of the notice requirements of Rule 23 is asserted by defendants as the final reason for finding that plaintiff's representation of the class is inadequate. The thrust of defendants' argument is that the notice suggested by plaintiff, which would consist of mailing a letter to each person who submitted a letter of transmittal, would be inadequate because many of

the letters were in the names of brokerage houses and such notice would obviously not reach all members of the class. Even if defendants' contention is correct, this alone neither establishes that plaintiff has disregarded the notice requirements of Rule 23 nor that she will inadequately represent the class. Moreover, it is not yet clear what type of notice will be appropriate in this case, since neither party has determined whether the individual class members can be identified and, if so, how easily and inexpensively. In addition, when faced with a similar class, the Court in Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969) did not hold that notice by publication was necessarily essential for adequate notice, at least pending the outcome of an attempt to identify all of the class members from the brokerage firms which had submitted letters of transmittal. Finally, the essential issue regarding Rule 23(c) (2) may be the adequacy of representation, rather than whether notice can be provided to as many of the class members as possible. This is especially true if the class members can be identified or notified only at an expense so great that it could result in the defeat of an action on other than the merits. Adequate Representation, Notice and the New Class Action Rule: Effectuating Remedies Provided by the Securities Law, 116 U.Pa.L.Rev. 889 (1968).

■ In sum, the adequacy of the representation is established if the representative shares common issues and interests with the class and if the Court is assured that the representative will vigorously prosecute the rights of the class through qualified counsel. Epstein v. Weiss, *supra*, 50 F.R.D. at 392; *accord*, Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968). I am convinced that these requirements have been satisfied.

Defendants also contend that plaintiff has not established that her claims will be typical of those of the class and that the common questions of law and/or fact will predominate over the individual issues of the class members. Fed.R.Civ.P. 23(a) (3) and (b) (3). Basically, defendants claim that the individual issues of reliance and the quantum of damages predominate over the common issues of the class, and that because of the possible differences in expertise among the members and because some of the members may have tendered their stock upon the advice of their brokers, plaintiff's claims are not typical of the class.

■ These arguments are, of course, untenable and have been uniformly rejected. Identical assertions arose in Epstein y. Weiss, *supra*, 50 F.R.D. at 392–394, a case factually similar to the instant one, in which the Court held that "the class issues will predominate if the complaint alleges a common course of conduct over a period of time, directed against the members of the class, generally relied upon, and violating common statutory provisions." That same Court further noted that in cases such as these it is doubtful that even reliance and the quantum of damages are individual issues: "[T]his case involves the *sale* of shares by a class at the same price, pursuant to the same Tender Offer. If the defendants are liable, it would appear that each member of the class suffered the same loss per share. With respect to reliance, cases have indicated that where the defendant's liability results from an *omission* of material facts, the proof of reliance by each class member may be unnecessary." Epstein v. Weiss, *supra*, at 393; *accord*, 3 Loss, Securities Regulations 1965 (2d Ed. 1961); Esplin v. Hirschi, 402 F.2d 94, 99–100 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). In the event the issues of reliance and damages are found to be individual, it is well established that they will not defeat the class action but merely may necessitate separate trials on these issues. *E. g.*, Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968); Weiss v. Tenney Corp., 47 F.R.D. 283, 290–291 (S.D.N.Y. 1969).

In its discussion of whether the class was actually composed of several subclasses and whether the plaintiff's claim was typical of those of the class, the Court in Epstein v. Weiss, *supra*, 50 F. R.D. at 394, noted that "[t]he defendants' argument would preclude the effective use of the class action in most securities fraud cases since these characteristics [the differences in the sizes of the holdings and in the expertise of the various class members] are common to stockholders in all public corporations. The court is convinced that there exists only one class: Those persons who tendered their * * * shares pursuant to the Tender Offer. If the plaintiffs are correct in claiming that the defendants omitted to state material facts from the tender letter, the omitted information was no more available to brokers and large investment institutions than it was to the small investor. All investors would have been misled by the same operative facts."

Finally, the superiority of the class action in this case is obvious. This is an action in which a large number of shareholders may have been injured, but none sufficiently to warrant institution of a suit on his own behalf. "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2d Cir. 1968).

 Although plaintiff moves for class determination and would serve as class representative, she contends that the expenses involved in notifying the class should be borne by defendants since they can better afford such costs. In addition, plaintiff argues that to require plaintiffs to pay the costs of notice where a meritorious claim exists will often defeat the action, since fre-quently the plaintiff in a class action will be unable to pay the expenses of notifying a large class such as the present one. However, this Court prefers the reasoning of Berland v. Mack, 48 F.R.D. 121, 131–132 (S.D.N.Y.1969), in which the Court held that "[j]ust as it would be unwise to frustrate the use of the class action device by imposition of a rigid rule that plaintiffs must pay the cost of notice, so it would be equally unfair to adopt a rule that the cost must be paid out of the corporate coffers. We do not agree that the corporate defendant should be required initially to pay for the notice merely because charges of breach of fiduciary duty are at issue or because it is in a better position to pay than are the named plaintiffs. * * * To give a single member of a class who asserts a claim of doubtful merit the power to trigger such a substantial expenditure of corporate funds, *without any assurance of joinder on the part of other class members*, smacks of confiscation." (Emphasis supplied.) The best approach to this question is to weigh all of the relevant criteria and then assign the costs to one or both of the parties. The relevant factors include: the merit of the claim; the defendants' desire for a res judicata effect on the class; the number of plaintiffs and their financial responsibility; the value and percentage of plaintiff's holdings as compared with those of the class; the plaintiff's ability to make the initial outlay; and the cost of notice. Berland v. Mack, *supra* at 132. After due consideration of these factors, I am constrained to follow Berland v. Mack, *supra* at 132, in which the Court held that "where the claim's merit is doubtful, the cost of notice is high, the defendants have no particular desire to gain the advantages of class res judicata, and plaintiffs would be unable in the event of dismissal to reimburse the corporation, plaintiffs should be required to pay out the initial expense rather than obtain a 'free ride' at the corporation's expense."

There is considerable doubt about the prospects of plaintiff's success in the within action; defendants have vigorously opposed the class action; although some class members are likely to still be Avco shareholders, none has intervened in this suit despite being informed on several occasions over the last three years by the defendants of its pendency; and, finally, plaintiff has not offered any evidence that she is prepared to repay the defendants the costs of notice in the event she should lose the suit. Under these circumstances, it would be unreasonable for this Court to require the defendants to bear the expenses involved in notifying the class.

As indicated earlier in this opinion, the form and the method of notifying the class is not definite. No real effort has been made by either party to determine whether every individual class member can be easily and inexpensively identified through the transmittal letters and the brokerage firms that handled many of the tenders of the stock. Without first determining whether the class members can be easily identified and what the cost of the notice would be, I cannot say with certainty what form the notice should take. Again, it should be noted that the crucial issue may in fact be the adequacy of the representation and not whether as many class members as possible have been notified. Adequate Representation, Notice and the New Class Action Rule: Effectuating Remedies Provided By the Securities Law, 116 U.Pa.L.Rev. 889 (1968).

The parties are therefore directed to settle an order in accordance with Fed. R.Civ.P. 23(c) (2).

Plaintiff has also moved to amend the complaint in the within action. Since this motion is unopposed by defendants, it will be granted.

Accordingly, and for the foregoing reasons, plaintiff's motions for class determination and to amend the complaint are granted, and plaintiff is directed to pay the expenses involved in notifying the class.

Settle order on notice.