John W. SAUR and Marvin J. Hunter, acting on behalf of themselves and all others similarly situated who consent to become party plaintiffs, Plaintiffs,

v.

SNAPPY APPLE FARMS, INC., a Michigan corporation, and Charles R. Saur, Defendants.

No. 1:00–CV–596.

United States District Court, W.D. Michigan, Southern Division.

Oct. 10, 2001.

Richard M. Van Orden, Grand Rapids, MI, Gary N. Gershon, Cedar Springs, MI, for plaintiffs.

Frank H. Johnson, Borre, Peterson, Fowler & Reens, PC, Grand Rapids, MI, for defendants.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on Plaintiffs John W. Saur and Marvin J. Hunter's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. Defendants Snappy Apple Farms, Inc. and Charles R. Saur have opposed the Motion. Plaintiffs have also replied in favor of the Motion. No party has requested oral argument on the Motion.

### I. BACKGROUND

This lawsuit was filed on August 10, 2000. The parties to this action participated in a Rule 16 Conference on October 18, 2000. The Conference resulted in the entry of a Case Management Order, which established

the following deadlines in this lawsuit: (1) discovery was to be completed by April 22, 2001; (2) dispositive motions were to be filed by May 10, 2001; (3) the final pre-trial conference was to be heard on October 25, 2001; and (4) trial was to commence in the November 2001 trial term.

Plaintiffs' Amended Complaint was filed on October 20, 2000 and asserts three counts: Count One under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the section codified at 29 U.S.C. § 216(b), for non-payment of overtime wages; Count Two under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.* and particularly 29 U.S.C. § 1832, for non-payment of wages due them as agricultural workers (referring to the overtime wages allegedly due);[1] and Count Three for retaliatory discharge of Marvin J. Hunter in alleged violation of 29 U.S.C. §§ 215(a)(3) and 216(b). Count One seeks both the overtime wages due and liquidated damages. Count Two seeks only statutory damages and equitable relief. The AWPA permits statutory damages per violation of an amount not more than $500,000 for class actions involving intentional violations. *See* 29 U.S.C. § 1854(c)(1).

On July 23, 2001, this Court decided Plaintiffs' Motion for Partial Summary Judgment by Order of that date. The Court's consideration of the Motion, which sought summary judgment as to Count One, showed that there were genuine issues of material fact as to non-payment of overtime wages to Plaintiffs, which related to the question of whether Defendants were entitled to an affirmative defense under 29 U.S.C. § 213(b)(12) in that the employees were engaged in "agriculture" and Defendants were exempt from paying overtime wages. More particularly, there were factual questions including whether the lease of Defendants' storage facilities to others in parts of 1997–1999 was "temporary," "isolated" or otherwise "incidental" to Defendants' own farming operations (such that the

"agricultural exemption" would be available to Defendants.) Liability as to Count Two appears to rise or fall on this issue.

On July 19, 2001, Plaintiffs filed the instant Motion for Class Certification. The Motion requests certification only as to Count Two. Plaintiffs assert that they meet the various requirements of Rule 23 for class certification and that certification should be granted notwithstanding a delay in seeking certification because the delay is not fatal and was prompted by delays in discovery. Defendants oppose this request on the grounds that the proposed class is not numerous and that the Motion is untimely. Defendants also note that as part of the FLSA statutory procedure[2] for suing on behalf of "similarly situated persons" the Plaintiffs have already attempted to contact class members and that only five such class members have "opted in" as to the Count One claims. Defendants infer from this that the proposed class members are not interested in participating in the AWPA class action and have already been afforded sufficient opportunity to participate in this action. In reply, Plaintiffs argue that their request was timely given the facts of this case. Plaintiffs urge that the number of class members is sufficiently large to make joinder impracticable. They also urge that the seldom usage of the FLSA "opt in" procedure does not relate at all to whether the proposed class as to the AWPA cause of action should be certified, the latter question being governed by the requirements of Rule 23.

## II. LEGAL STANDARDS

According to the United States Supreme Court, this Court must conduct a "rigorous analysis" into whether the prerequisites of Federal Rule of Civil Procedure 23 are met before certifying a class action. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court has broad discretion in deciding

1. It is evident from the statute that many, if not most, of the putative class members will have their rights to damages determined under 29 U.S.C. § 1822 rather than section 1832 because those class members are considered "migrant agricultural workers" as opposed to "seasonal agricultural workers." While this is not explicit

from the Amended Complaint, it is sufficiently implicit so as to give fair notice to the Defendants, particularly in light of this clarification.

2. *See* 29 U.S.C. § 216(b).

whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). The "rigorous analysis requirement" means that a class is not maintainable merely because the complaint parrots the legal requirements of Rule 23. *American Med. Systems,* 75 F.3d at 1079. Although a hearing prior to the class determination is not always required, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364; *see also Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974) (stating that in some cases it will be necessary to give the parties an opportunity to present evidence on the certification question). In this case, the extensive briefing filed by the parties, the Court's past review of motions, and the documentary evidence and affidavits filed make the hearing of evidence unnecessary because the Court is able to probe behind the pleadings without additional evidence or argument.

■ Rule 23 places the burden of class certification on the Plaintiffs. *In re American Medical Systems,* 75 F.3d at 1079; *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976). Under the language of the Rule, the Plaintiff must prove four prerequisites under subsection (a) and one of the prerequisites under subsection (b) for the class to be certified. The Rule provides in pertinent part as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) \*\*\*

(2) \*\*\*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.Proc. 23(a)–(b).

## III. LEGAL ANALYSIS

To understand a discussion of the class action aspect of this action, it is first important to understand the proposed class which Plaintiffs seek to certify. As indicated above, the class definition concerns only Plaintiffs' claims under the AWPA for nonpayment of overtime wages allegedly due them and those persons employed by Defendants who are similarly situated to Plaintiffs. Plaintiffs offer a proposed class definition in paragraph 14 of the Amended Complaint and Plaintiffs further refine this definition in their Motion as follows: All of Defendants' agricultural workers who were not paid overtime wages when due between August 10, 1997 and the date of Judgment. (*See* Plaintiffs' Motion at 3.)

Given this definition, there is a fundamental ambiguity in the Motion, which the Court

will now attempt to unravel. The Motion asks for a determination that the instant class should be certified under Rule 23(b)(3), but it describes the class as containing class members who will be determined in the future. In such cases as *Roman v. Korson*, 152 F.R.D. 101, 111 (W.D.Mich.1993) and *Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D.Wash.1996), federal courts have allowed class definitions which include "future" class members under Rule 23(b)(2), which permits class certification without attempted notification of class members. For classes certified under Rule 23(b)(3), however, the Court must direct the parties to provide the "best notice practicable" for class members, including mailed notification, so that class members may "opt out." Rule 23(c)(2). *See Leyva v. Buley*, 125 F.R.D. 512 (E.D.Wash.1989) (defining Rule 23(b)(2) class to include future workers, but defining Rule 23(b)(3) class as including only workers previously employed).

Given that the instant Motion asks for relief under Rule 23(b)(3) and given that the Motion is unlikely to succeed under Rule 23(b)(2) because this action seeks as its predominant relief monetary damages, *see Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir.1998) (holding that case is certifiable under Rule 23(b)(2) only if injunctive relief predominates); *Butler v. Sterling, Inc.*, 210 F.3d 371, 2000 WL 353502, *6 (6th Mar. 21, Cir.2000) (same); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D.Mich. 2001) (same), the Court will understand the request for certification as made under Rule 23(b)(3) and will reform the class definition to read as follows: All of Defendants' agricultural workers who were not paid overtime wages when due between August 10, 1997 and the date of the filing of the Complaint (August 10, 2000).[3]

With this proposed class in mind, the Court now proceeds to address the particular requirements of Rule 23, both subparagraphs (a) and (b)(3).

### Rule 23(a)(1)—Numerosity

First, the Court must determine whether the class is sufficiently numerous that joinder is impracticable. Numbers alone are not dispositive when the numbers are small, but will dictate impracticability when the numbers are large. H. Newberg and A. Conte, *1 Newberg on Class Actions*, § 3.05 (3rd ed.1992). The Sixth Circuit Court of Appeals has held that a class of at least 35 employees was sufficient to meet the numerosity requirement under the circumstances of that case. *Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir.1974); *see also Roman v. Korson*, 152 F.R.D. 101, 105 (W.D.Mich.1993).

In this case, the class appears to greatly exceed the minimum necessary to meet the numerosity requirement. Plaintiffs estimate the total class at 168–173 employees. (*See* Plaintiffs' Motion at 4 and Exhibit A.) Defendants do not give an estimate, but cite to the deposition of Marvin Hunter for the proposition that the packing shed employed between 14 and 22 employees at any one time. (Marvin Hunter Dep. at 9.) Of course, the problem with utilizing these latter numbers is that the Defendants' agricultural workforce was not static and varied greatly from time to time and year to year. This fact is reflected in the Plaintiffs' higher estimates and the Defendants' own business records, which give the names of a large number of potential class members. As such, the Court finds that the number of likely class members is likely to be much closer to Plaintiffs' estimate than Defendants' "estimate."

Furthermore, the Court finds that the other circumstances of this case favor a finding of numerosity, including the following factors: (1) the class members are migrants and are likely to be geographically dispersed; (2) the class members are, in large part, not native English speakers and will have difficulty in understanding English and utilizing court systems in the United States of America; (3) the class members are likely to lack financial resources; and (4) the size of an individual statutory claim under the AWPA, $500 per violation, makes it such that individuals are unlikely to seek to vindicate their rights on an individual basis. *See Leyva v.*

---

**3.** The selection of the filing date is logical from the standpoint of customary practice, notification of class members, the documents filed in connection with this Motion (which relate to employees between 1997 and 2000) and past discovery in this case.

*Buley,* 125 F.R.D. 512 (E.D.Wash.1989); *Korson,* 152 F.R.D. at 105.[4]

Therefore, the Court determines that the numerosity requirement is met.

### Rule 23(a)(2)—Commonality

■ Next, the Rule requires commonality—that there are questions of law and fact common to class members. Not every common question suffices. *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998). What is necessary for certification are common issues the resolution of which will advance the litigation. *Id.* In cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure. *See Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.,* 182 F.R.D. 500, 507 (W.D.Mich.1998) and cases cited therein; *see also Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188 (6th Cir.1988) (determining that there were common questions of law and fact as to mass tort chemical disposal site); *Borcherding–Dittloff v. Transworld Systems, Inc.,* 185 F.R.D. 558, 563 (W.D.Wis.1999) (determining that there were common questions of law and fact as to Truth in Lending Act violations); *Lozada v. Dale Baker Oldsmobile,* 197 F.R.D. 321 (W.D.Mich.2000) (same); *Communities for Equity v. Michigan High School Athletic Association,* 192 F.R.D. 568, 572 (W.D.Mich. 1999) (determining that there were common questions of law and fact as to whether defendants' procedures and policies violated Title IX).

Conversely, where the nature of the legal claims are such that individuals would have to submit separate proofs to establish liability, class actions are disapproved due to lack of commonality. *See, e.g., Sprague,* 133 F.3d at 398 (class action disapproved as to estoppel which would require differing proofs); *Freeman v. State–Wide Carpet Distributors, Inc.,* 365 Mich. 313, 112 N.W.2d 439 (1961) (disapproving class action as to common law

fraud because of differences in proofs as to reliance).

■ Once it is determined that there are common questions of law and fact as to a legal claim, differences in the amounts of damages sustained by class members will usually not defeat certification. *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332 (11th Cir.1984). However, there must be a workable system for determining damages for class members if claims for monetary damages are to proceed. *Cicelski v. Sears, Roebuck & Co.,* 132 Mich.App. 298, 348 N.W.2d 685, 689 (1984).

■ This case is, as the filings indicate, an exceptionally appropriate case for certification. As in the case of *Leyva v. Buley,* 125 F.R.D. 512 (E.D.Wash.1989), the facts creating liability under the AWPA are identical for each of the class members and the class representatives. Indeed, this case involves even more factual similarity than did *Leyva.* In this case, the factual disputes do not concern whether the employees were paid overtime wages in that Defendants believed themselves exempt from paying overtime wages. Rather, the factual disputes relate to whether the Defendants, as operating a farming operation, qualified for the agricultural exception to the Fair Labor Standards laws. These factual disputes relate to the manner in which the farm operated and are the same for each of the class members. Furthermore, the Plaintiffs have eliminated any potential problems as to the assessment of damages by limiting the AWPA claims to statutory damages, which do not depend on individual calculations based on actual injuries.

Therefore, the Court determines that the requirement of commonality is met.

### Rule 23(a)(3)—Typicality

■ Rule 23 requires that the claims asserted by class representatives be typical of class members. *American Med. Systems,* 75

---

4. The presence of this factor while supporting the numerosity requirement shows why the Court cannot certify a class under Rule 23(b)(1). Namely, the likelihood is that without this action few claims will be litigated such that there is only a small likelihood of "inconsistent" or "dispositive" adjudications, which are the preconditions for certification under Rule 23(b)(1).

F.3d at 1082. As the Court of Appeals said in the *American Medical Systems* case:

> "Typicality determines whether a sufficient relationship .exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. . . ."

\*    \*    \*    \*    \*    \*

■■■■ . . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Id.* (citation omitted). The typicality requirement, so explained, tends to merge with the commonality requirement. *Falcon,* 457 U.S. at 158 n. 13, 102 S.Ct. 2364. Nevertheless, it is a separate inquiry and in particular focuses attention on differences between class representative claims and class claims which would defeat the representative nature of the class action. *Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 598 (E.D.Mich.1996).

■■■ In this case, the claims of the class representatives, as to the AWPA, are identical to the proposed class members claims. They each involve nonpayment of hourly overtime wages for hourly work in the packaging of apples. These claims each rise and fall based on whether Defendants qualify for the "agricultural exemption" to the overtime laws, which depends on how the farm was operated during the relevant years. As such, the Court also determines that the claims of the class representatives are typical of those of claims members and that the requirements of Rule 23(a)(3) are met.

### Rule 23(a)(4)—Adequacy of Representation

■■■ Rule 23(a) requires that the class members and their counsel be prepared to provide fair and adequate representation to the class. In *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.1976), the Sixth Circuit Court of Appeals articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter,* 532 F.2d at 525; *see also American Med. Systems,* 75 F.3d at 1083.

■■■ It is not disputed that the Plaintiffs are adequate class representatives and that their counsel are well suited to vigorously prosecute this matter on behalf of this staff. There appear to be no conflicts of interest preventing adequate representation. Furthermore, the attorneys for Plaintiffs, Gary Gershon and Richard Van Orden, have truly significant and unique experiences in representation in multiple federal farm worker class actions. This Court has previously approved of attorney Gary Gershon's representation of class members in multiple prior lawsuits before this Court.

Therefore, without objection, the Court approves the class representatives and counsel as meeting the requirements of Rule 23(a)(4).

### Rule 23(b)(3)—Common Questions/Individual Questions

■■■ Plaintiffs seek to certify this class action as a class action under both Rule 23(b)(3). Rule 23(b)(3) employs a four-factor test addressed to the general questions of whether the common questions of law and fact of class members predominate over individual questions of class members, and whether a class action is a superior, fair and efficient method for adjudicating the controversy. Defendants have not opposed a conclusion that the requirements of Rule 23(b)(3) are met. The factors to consider under the Rule are specifically noted in the Rule. These factors are not exhaustive, and a court may consider such other factors as may be relevant to the litigation. *See* 1 Newberg at § 4.28; *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114 (5th Cir.1975). The factors, however, are all directed to the notions of judicial integrity, convenience and economy. *See Lozada v. Dale Baker Oldsmobile,* 197 F.R.D. 321 (W.D.Mich.2000) (citing *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D.Mo.1977)).

■■■ In this matter, the factors specified in the Rule favor a conclusion that common questions predominate over individual questions and that a class action is a superior, fair

and efficient method of adjudication. First, the Court must consider the extent to which the individual class members have a strong interest in individually controlling their claims. In this case, the interest in individual lawsuits is minimal in that the class mechanism allows class members for a more effective and far reaching remedy than would be available to them on an individual basis. Second, the Court must consider the extent of litigation already commenced. There is no mention of previous lawsuits filed and the Court assumes from the absence of mention that no such lawsuits have been filed. Third, the Court must consider the desirability of concentrating this suit in this forum. This forum is the logical home for this suit in that the farm is within the Western District of Michigan and in that at least some of the migrant workers are likely to return to the farm for future seasons. The litigation of this suit here would not pose any significant problems in terms of the Court's docket or attention to other matters. Fourth, the Court is required to consider any difficulties likely to be encountered in the management of this suit. There appear to be no significant problems associated with the class action mechanism and the use of the mechanism appears likely to achieve economies of time, effort and expense in resolving legal issues of class members. The maintenance of the class action is likely to delay trial, but not significantly. Therefore, the Court finds that the AWPA class qualifies for certification under 23(b)(3).

### Timeliness

■■■ Having determined that the proposed class, as modified, meets the requirements of Rule 23 for certification, the Court must consider one further argument of Defendants—that the Motion is untimely in that it was not filed until the close of discovery.

It is true that Rule 23(c)(1) by its express language contemplates that certification decisions will be made as soon as practicable. The Court views this language as more than a hollow promise. Nevertheless, this language and the language of Rule 6(b)[5] foresee that there are circumstances when class ac-

tions cannot be certified soon after the action is filed.

■■■ As indicated in Newberg, the two factors most pertinent to granting certification belatedly are: (1) the circumstances causing the delay; and (2) whether the opposing parties have been prejudiced by the delay. 1 *Newberg,* at § 3.43; *see also Livesay v. Punta Gorda Isles, Inc.,* 550 F.2d 1106 (8th Cir.1977) (holding that 14–month delay in seeking certification to permit discovery did not warrant denial of certification), *rev'd on other grounds,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Brickman v. Tyco Toys, Inc.,* 722 F.Supp. 1054 (S.D.N.Y. 1989) (holding that denial of certification was inappropriate in absence of prejudice); *Feder v. Harrington,* 52 F.R.D. 178 (S.D.N.Y.1970) (holding that delay in seeking certification incidental to discovery did not warrant denial of certification particularly where there was no indication of prejudice).

In this case, the Defendants assert that they will be prejudiced by the delay in certification, but they do not explain this argument other than by reference to deadlines for discovery, motion filing and trial. To the contrary, the Court determines that allowance of the late-filed certification Motion will not prejudice the Defendants. This is, first of all, because the Court anticipates that this case will need to be rescheduled in light of the certification and that the rescheduling, at a scheduling conference, will provide Defendants ample opportunity to avoid surprise and to adequately prepare for trial of the certified class action (including additional opportunities for discovery and motion filing, if deemed appropriate). Furthermore, the initial scheduling of this matter was aggressive such that Defendants should have expected that some changes to the schedule would be necessitated by future events, especially including the certification of a Rule 23(b)(3) class, which necessarily requires delay for notification.

On the subject of the cause of the delay, the Court also determines that the completion of the discovery done to date was necessary and pertinent to the class certification

5. Rule 6(b) permits enlargement for good cause shown.

Motion. This is because the discovery, which was contentious, revealed business records which disclosed probable class members to Plaintiffs. This discovery was then used to determine the class size and to seek certification. Accordingly, the Court concludes that certification will be permitted notwithstanding the delay in filing of this Motion.

### Class Notification under Rule 23(c)(2)

Given that the Court has determined to grant class certification under Rule 23(b)(3), the Court is required to direct the parties to notify class members of this action and to provide them an opportunity to "opt out." The Court will not at this time dictate the precise terms of the notice because it is hopeful that the parties can reach a stipulated order approving a class notification which is consistent with the requirements of Rule 23(c)(2). Therefore, the Court will, at this time, merely adjourn this matter from the scheduled pre-trial and trial dates and advise the parties to jointly contact the office of Magistrate Judge Ellen S. Carmody to obtain a scheduling hearing for the purpose of amending the Case Management Order and for the purpose of reaching agreement on the form and manner of class notification. Any stipulated order approving class notification should be submitted to the Court within fourteen days of the scheduling conference. In the absence of a stipulation, the parties should both submit briefing and proposed orders to the Court within twenty-one days of the scheduling conference on the issue of class notification. The opposing party may respond to the briefing within seven days of its filing.

### CONCLUSION

In accordance with this Opinion, an Order shall enter granting the Motion for Class Certification and rescheduling this suit.